# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

_____

DAWN MARIE D.,[1]

                                    Plaintiff,

       v.                                         5:23-CV-1194
                                                      (MAD/MJK)

COMMISSIONER OF SOCIAL SECURITY,

                                    Defendant.

_____

HOWARD D. OLINSKY, ESQ., for Plaintiff
VERNON NORWOOD, Special Asst. U.S. Attorney, for Defendant

MITCHELL J. KATZ, U.S. Magistrate Judge

TO THE HONORABLE MAE A. D'AGOSTINO, U.S. DISTRICT JUDGE:

## REPORT-RECOMMENDATION

      Plaintiff commenced this action pursuant to the Social Security Act, 42 U.S.C. §

405(g), seeking judicial review of a final decision of the Commissioner of Social

Security, denying her application for benefits. Plaintiff did not consent to the

jurisdiction of a Magistrate Judge (Dkt. No. 4), and this matter was therefore referred to

me for Report and Recommendation by United States District Judge Mae A.

D'Agostino, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d). Both parties filed

---

[1]  In accordance with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in June 2018 to better protect personal and medical information of non-governmental parties, this Memorandum-Decision And Order will identify the plaintiff using only her first name and last initial.

briefs (Dkt. Nos. 13, 17, 18), which the court treats as motions under Federal Rule of Civil Procedure Rule 12(c), in accordance with General Order 18.

## I.    __PROCEDURAL HISTORY__

Plaintiff applied for SSI and SSDI benefits on November 9, 2010, alleging disability due to a learning disability, depression, and anxiety with an alleged onset date of January 1, 2010. (T. 255-69, 319).[2] Plaintiff's claims were denied initially on February 8, 2011. (T. 112-13). Plaintiff appealed that determination, and a hearing was held before Administrative Law Judge ("ALJ") Edward I. Pitts on November 1, 2012. (T. 41-111). On December 6, 2012 ALJ Pitts issued a decision, finding that plaintiff was not disabled within the meaning of the Social Security Act. (T. 19-30). This decision became the Commissioner's final decision on March 31, 2014 when the Appeals Council denied plaintiff's request for review. (T. 1–6).

Plaintiff sought judicial review of the Commissioner's decision, and on January 28, 2016, United States Magistrate Judge Daniel E. Stewart issued a Report and Recommendation, finding that ALJ Pitts erred in not consulting a vocational expert and recommending remand. (T. 739-70). United States District Judge Lawrence E. Kahn adopted the Report and Recommendation and remanded the case on March 11, 2016, and the Appeals Council remanded the case to an ALJ. (T. 773-74, 777). On August 31, 2017, a second hearing was held before ALJ

---

[2] Plaintiff later also alleged disability due to back problems.

Bruce S. Fein. (T. 605-55). On October 16, 2017, ALJ Fein issued a recommended decision to the Appeals Council, finding that plaintiff was not disabled under the Social Security Act. (T. 779-99). Plaintiff raised an Appointments Clause challenge to ALJ Fein's recommended decision, and the Appeals Council remanded the case to a new ALJ. (T. 814-15).

A third hearing was held before ALJ John P. Ramos on June 2, 2020. (T. 657-88). On July 30, 2020, ALJ Ramos issued a decision, finding that plaintiff was not disabled under the Social Security Act from January 1, 2010 through the date of the decision. (T. 573-85). ALJ Ramos' decision became the final decision of the Commissioner when the Appeals Council did not review the claim on its own. Plaintiff commenced a second action in this court on September 30, 2020. (T. 2234-2264).

On March 21, 2022, Chief U.S. District Judge Brenda K. Sannes issued a Memorandum-Decision And Order, remanding ALJ's Ramos' July 30, 2020 decision, holding that ALJ Ramos failed to properly assign controlling weight to the opinions of treating physicians Drs. Khouzam, Athwal, and Augustine, or to "explicitly consider" the factors enumerated in *Burgess.* (T. 2258-59). The court was therefore unable to determine whether ALJ Ramos provided "good reasons" for assigning "less weight" to the opinions of Drs. Khouzam, Athwal, and Augustine. (T. 2259). On May 25, 2022, the Appeals Council issued an order vacating the Commissioner's final decision and

remanding for further proceedings consistent with Judge Sannes' Memorandum-Decision And Order. (T. 2269).

On October 11, 2023, plaintiff, together with her counsel, appeared before ALJ Ramos. (T. 2208-29). Testimony was elicited from plaintiff, and Vocational Expert ("VE") Peter Manzi. The hearing was continued on June 30, 2023, at which time testimony was elicited from medical expert BillFuess, Ph.D. and VE Susan Gaudet. (T. 2190-2207). On July 12, 2023, ALJ Ramos issued a partially favorable decision. (T. 2156-89).

## II.   <u>GENERALLY APPLICABLE LAW</u>

### A.    **Disability Standards**

To be considered disabled, a plaintiff seeking DIB or SSI must establish that she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months . . ." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. §§ 404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Selian v. Astrue,* 708 F.3d 409, 417 (2d Cir. 2013*)*; *see also* 20 C.F.R. § 404.1520, and 20 C.F.R. § 416.920.

The plaintiff has the burden of proof to establish a disability at the first four steps. *See Selian,* 708 F.3d at 418. However, if the plaintiff establishes that his impairment prevents him from performing his past work, the burden shifts to the Commissioner to prove the final step. *Id.*

### B.    Scope of Review

In reviewing a final decision of the Commissioner, a court "is limited to whether the [Commissioner's] conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012); *see also Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g). Substantial evidence is "such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera,* 697 F.3d at 151. It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Id.* However, this standard is a very deferential standard of review "even more so than the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *see also Selian,* 708 F.3d at 417 ("the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn") (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983)). However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Id.*; *see also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record. *See Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) ("[W]e are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony[.]"). However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004);

*see also Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III.    FACTS

For the sake of brevity, the court will not summarize plaintiff's prior testimony or the relevant medical records and opinions, all of which are more fully set forth in Judge Sannes' Memorandum-Decision And Order in *Dawn Marie D. v. Kiolo Kijakazi*, No. 5:20-CV-1199 (BKS). (T. 2234-2264). The court, will, however, summarize the testimony offered at the October 11, 2022 and June 20, 2023 administrative hearings before ALJ Ramos, as well as any additional medical records and/or medical opinions garnered after the June 2, 2020 administrative hearing.

### 1.  October 11, 2022 Administrative Hearing

Plaintiff testified that she lived with her son and his father. (T. 2215). Plaintiff also testified that since the June 2, 2020 hearing, she had been employed at a fast-food restaurant, working fifteen to twenty-five hours/week at the counter/window.  Her doctor ultimately "took [her] out of work" because of pain in her leg and feet. (T. 2213-14). Plaintiff also testified that she had been experiencing pain in her leg and feet for approximately six to eight months. (T. 2214).

Plaintiff testified that she takes medication for anxiety, depression, sleep, headaches, pain, and arthritis. (T. 2215). According to plaintiff, her medications cause nausea, dizziness, and tiredness. (T. 2216). Plaintiff testified that she is

7

unable to stand in one place without support for no more than five minutes, and that she can only walk a block. (*Id.*).

When questioned by her attorney, plaintiff testified that she suffers from back problems and experiences stabbing pain if she is on her feet more than three hours during the day. (T. 2216-17). Plaintiff also testified that she can perform some household chores. (T. 2217). Plaintiff testified that she has difficulty bending and using her upper extremities. (*Id.*). Plaintiff is unable to hold anything heavy in her left hand and testified that she wears a brace throughout the day to provide her with support for her left wrist, left hand and left arm. (T. 2218). Plaintiff testified that cleaning, lifting, carrying groceries, and repetitive motions cause her pain. (*Id.*). Plaintiff can comfortably lift and carry ten pounds, and that anything heavier would cause her arms to become weak and place pressure on her "whole body." (T. 2218-19).

Plaintiff testified that she does not socialize and can sometimes go to the grocery store. (T. 2219). Although plaintiff can make a shopping list, her boyfriend "picks everything out." (*Id.*). When plaintiff is at home, she elevates her legs on pillows to alleviate her pain. (*Id.*). Plaintiff's ability to focus and concentrate is affected by her pain. (*Id.*). Plaintiff also testified that her depression affects her daily, and that her physical and mental conditions affect her sleep. (*Id.*).

According to plaintiff, she needs assistance putting on her pants and socks. (T. 2221). Plaintiff normally wears "slides" on her feet and requires help when she

needs to wear boots and shoes. (*Id.*). Plaintiff also testified that she uses a cane and a wheeled walker for balance. (*Id.*).

## 2. June 20, 2023 Administrative Hearing

Dr. Fuess, a clinical psychologist, testified that plaintiff had the following medical impairments/severe impairments - borderline intelligence, learning disorder not otherwise specified, posttraumatic stress disorder, and unspecified depression disorder. (T. 2195). Dr. Fuess further testified that plaintiff's impairments, individually or in combination, did not meet or equal an of the Commissioner's listings. (T. 2196).

Dr. Fuess evaluated the paragraph B criteria based on the totality of the evidence that he reviewed. (*Id.*). Dr. Fuess testified that plaintiff had moderate limitations in understanding, remembering, and applying information. His opinion was predicated on plaintiff's full scale IQ score of 72. (*Id.*). Dr. Fuess further testified that plaintiff had a moderate limitation for interacting with the public, and a mild limitation for interacting with supervisors and coworkers. (*Id.*). Dr. Fuess did not see any evidence to support a marked limitation in this area. (*Id.*). In the area of concentration, persistence, and maintaining pace, Dr. Fuess testified that plaintiff had a moderate limitation, at most. (*Id.*). As to adapting and managing oneself, Dr. Fuess testified that plaintiff had a moderate limitation. (T. 2197).

Functionally, Dr. Fuess testified that plaintiff was limited to performing simple, routine, and repetitive tasks. (*Id.*). Dr. Fuess further testified that plaintiff

could perform "lower stress types of work, non-quota" with only occasional interaction with the public (T. 2197-98).

When questioned by plaintiff's counsel, Dr. Fuess testified that an individual with moderate limitations in the domain of concentration, persistence and pace would be off task less than "10% of the day for simple, well learned, routine and repetitive tasks." (T. 2198). Dr. Fuess also testified that someone with the limitations he opined to would not be absent from work more than one day per month. (T. 2199).

## IV.    **THE ALJ'S DECISION**

At step one of the sequential evaluation, ALJ Ramos determined that plaintiff had not engaged in substantial gainful activity since January 1, 2010, the alleged onset date. (T. 2159). Next, ALJ Ramos found that plaintiff had the following severe impairments - degenerative disk disease of the lumbar spine, obesity, borderline intellectual functioning, a learning disorder, and post-traumatic stress disorder. (T. 2159). ALJ Ramos also determined that plaintiff's hip issues and hammertoes were not severe impairments. (T. 2160). At step three, ALJ Ramos determined that plaintiff's impairments, whether considered singly or in combination, did not meet or medically equal the criteria of any listed impairments in Appendix 1 to 20 C.F.R. Part 404, Subpart P.  (T. 2160-62).

Next, ALJ Ramos found that plaintiff had the residual functional capacity ("RFC") to perform

> light work as defined in 20 CFR 404.1567(b) and 416.967(b), and she
> retains the ability to understand and follow simple instructions and
> directions; perform simple tasks with supervision and independently;

> maintain attention/concentration for simple tasks; and regularly attend to a routine and maintain a schedule. The claimant can perform work with occasional decision-making related to the performance of simple tasks involving routine, repetitive or goal-oriented work rather than work involving a production rate pace. The claimant can frequently interact with coworkers and supervisors throughout the workday to the extent necessary to carry out simple tasks. She can have occasional, brief interaction with the public. She can make decisions directly related to the performance of simple work and handle usual workplace changes and interactions associated with simple work. The claimant should work in a position where she is not responsible for the work of or required to supervise others. Finally, she should work in a position with little change in daily work processes or routines.

(T. 2162-63).

In making the RFC determination, ALJ Ramos stated that he considered all of plaintiff's symptoms and the extent to which those symptoms could "reasonably be accepted as consistent with the objective medical evidence and other evidence[.]" (T. 2163). ALJ Ramos further noted that he considered "the medical opinion(s) and prior administrative medical finding(s)" pursuant to 20 C.F.R. §§ 404.1520c and 416.920c. (*Id.*). After considering the other evidence of record, ALJ Ramos concluded that although plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," her "statements concerning the intensity, persistence and limiting effects of these symptoms are not fully supported [.]" (T. 2165).

At step four, the ALJ Ramos found that plaintiff had no past relevant work and therefore, "the transferability of job skills [was] not an issue." (T. 2169). Finally, at step five, considering the plaintiff's age, education, work experience, and RFC, ALJ Ramos relied on the testimony of the VE in determining that beginning on May 28, 2023, the date that plaintiff's age category changed, no jobs existed in significant numbers in the

national economy that she could perform. (T. 2170). ALJ Ramos therefore concluded that plaintiff was disabled as of May 28, 2023. ALJ Ramos further concluded that prior to May 28, 2023 and considering plaintiff's age, education, work experience and RFC, there were jobs that existed in significant numbers in the national economy that plaintiff could perform. (T. 2169).

## V.   ISSUES IN CONTENTION

Plaintiff argues that remand is warranted because ALJ Ramos's decision was not supported by substantial evidence, and that he failed to apply the correct legal standards. Specifically, plaintiff contends that ALJ Ramos erred by improperly evaluated the medical opinions of plaintiff's treating physicians, Drs. Khouzam, Athwal, Augustine, and Brundage, despite the court and Appeals Council's directives on remand. (Plaintiff's Brief (Pl. Br.) pg. 1) (Dkt. No. 13). Defendant contends that the Commissioner's determination should be affirmed because there is substantial evidence to support ALJ Ramos' physical and mental RFC findings. (Defendant's Brief (Def. Br.) pgs. 11-26) (Dkt. No. 17).

For the reasons stated below, the court finds that ALJ Ramos provided "good cause" for not assigning controlling weight to the opinions of plaintiff's treating physicians, and that his RFC determination is otherwise supported by substantial evidence. Accordingly, the court recommends affirming the Commissioner's decision and dismissing plaintiff's complaint.

## VI.   RFC/EVALUATION OF MEDICAL EVIDENCE

### A.   Legal Standards

#### 1.   RFC

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis . . ." A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule. *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999)) (quoting SSR 96-8p, 1996 WL 374184, at *2)); *see also Babcock v. Berryhill*, No. 5:17-CV-00580 (BKS), 2018 WL 4347795, at *12-13 (N.D.N.Y. Sept. 12, 2018); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013); *Stephens v. Colvin*, 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations. *See* 20 C.F.R. §§ 404.1545, 416.945; *see also Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Kirah D. v. Berryhill*, No. 3:18-CV-0110 (CFH), 2019 WL 587459, at *8 (N.D.N.Y. Feb 13, 2019); *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010).

An ALJ must specify the functions plaintiff can perform and may not simply make conclusory statements regarding a plaintiff's capacities. *See Roat v. Barnhart*, 717 F. Supp. 2d 241, 267 (N.D.N.Y. 2010); *see also Martone*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984)); *LaPorta*, 737 F. Supp. at 183; *Stephens,* 200 F. Supp. 3d at 361 (N.D.N.Y. 2016); *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004). The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence. *See Natashia R. v. Berryhill*, No. 3:17-CV-01266 (TWD), 2019 WL 1260049, at *11 (N.D.N.Y. Mar. 19, 2019) (citing SSR 96-8p, 1996 WL 374184, at *7); *see also Angelo Michael G. v. Kijakazi*, No. 6:22-CV-00892 (TWD), 2023 WL 4763792 (N.D.N.Y. July 26, 2023) (quoting *Ferraris*, 728 F.2d at 587). "[A]n RFC finding is administrative in nature, not medical, and its determination is within the province of the ALJ." *Curry v. Comm'r of Soc. Sec.*, 855 F. App'x 46, 49 n.3 (2d Cir. 2021) (citing 20 C.F.R. § 404.1527 (d)(2)).

Furthermore, it is within the ALJ's discretion to resolve genuine conflicts in the evidence. *See Veino v. Barnhart,* 312 F.3d 578, 588 (2d Cir. 2002); *see also Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998) ("It is for the SSA, and not this court, to weigh the conflicting evidence in the record"); *Cage v. Comm'r of Soc. Sec.,* 692 F.3d 118, 122 (2d Cir. 2012) ("In our view, we defer to the Commissioner's resolution of conflicting evidence.").

14

## 2.    Evaluation of Medical Opinion Evidence[3]

In rendering a determination, the ALJ weighs all the evidence of record and carefully considers medical source opinions about any issue. *See* SSR 96-5p, 1996 WL 374183, at *2-3 (1996). Under 20 C.F.R. §§ 404.1527(e) and 416.927(e), some issues are not "medical issues," but are "administrative findings." The responsibility for determining these issues belongs to the Commissioner. *See* SSR 96-5p, 1996 WL 374183, at *2. These issues include whether the plaintiff's impairments meet or equal a listed impairment, the plaintiff's RFC, how the vocational factors apply, and whether the plaintiff is "disabled" under the Act. *Id.*

In evaluating medical opinions on issues that are reserved to the Commissioner, the ALJ must apply the factors listed in 20 C.F.R. §§ 404.1527(d) and 416.927(d). The ALJ must clearly state the legal rules that he applies and the weight that he accords the evidence considered. *See Drysdale v. Colvin*, No. 14-CV-722, 2015 WL 3776382, at *2 (S.D.N.Y. June 16, 2015) (citing *Rivera v. Astrue*, No. 10 Civ. 4324, 2012 WL 3614323, at *8 (E.D.N.Y. Aug. 21, 2012) (citation omitted)).

"Although the treating physician rule generally requires deference to the medical opinion of a claimant's treating physician, … the opinion of the treating

---

[3] Plaintiff's claim was filed prior to March 27, 2017 and is therefore governed by the "treating physician rule."

15

physician is not afforded controlling weight where … the treating physician issued opinions that are not consistent with other substantial evidence in the record …" *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); *see also Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002); *Dennis H. Commissioner of Social* Security, No. 6:21-CV-381 (LEK), 2023 WL 2692512 (N.D.N.Y. Mar. 29, 2023) (quoting *Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022) ("The ALJ is permitted to discount the opinion of a treating physician if it is inconsistent with other substantial evidence"); *Prince v.* Astrue, 514 F. App'x 18, 20 (2d Cir. 2013) (holding that the ALJ did not commit reversible error in rejecting a treating physician's opinion, as it was inconsistent with other substantial evidence in the record); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

If an ALJ decides not to give the treating source's opinion controlling weight, then he must explicitly consider the four *Burgess* factors: "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Estrella v. Berryhill*, 925 F.3d 90, 95-96 (2d Cir. 2019) (quoting *Burgess v. Astrue*, 537 F. 3d 117, 120 (2d Cir. 2008)).  "[T]he ALJ must 'give good reasons in [its] notice of determination or decision for the weight [it gives the] treating source's [medical] opinion.'"  *Id.* at 96 (citing *Halloran,* 362 F.3d at 32). Should an ALJ assign less

16

than controlling weight to a treating physician's opinion and fail to consider the above-mentioned factors, this is a procedural error. *Id.* It is impossible to conclude that the error is harmless unless a "searching review of the record . . . assures us that the substance of the treating physician rule was not traversed." *Id.*

However, where the ALJ's reasoning and adherence to the regulation is clear, and it is obvious that the "substance of the treating physician rule was not traversed," no "slavish recitation of each and every factor" is required. *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (citing *Halloran*, 362 F.3d at 31-32). The factors for considering opinions from non-treating medical sources are the same as those for assessing treating sources, with the consideration of whether the source examined the claimant replacing the consideration of the treatment relationship between the source and the claimant. 20 C.F.R. §§ 416.927(c)(1)-(6).

"The question here is whether the ALJ's assignment of weight is supported by substantial evidence, not whether this Court or another ALJ would have weighed the competing medical opinions differently or reached a different conclusion." *Sarah C. v. Comm'r of Soc. Sec.*, 5:19-CV-1431 (FJS), 2021 WL 1175072, at *17 (N.D.N.Y. Mar. 29, 2021) (citing *Michelle M. v. Comm'r of Soc. Sec.*, 3:18-CV-1065 (TWD), 2020 WL 495170, at *8 (N.D.N.Y. Jan. 30, 2020) (citations omitted); *see also Clark v. Comm'r of Soc. Sec.*, 7:13-CV-256 (FJS), 2016 WL 1057047, at *6 (N.D.N.Y. Mar. 14, 2016) (quotation marks omitted)

**B.    Analysis**

ALJ Ramos did not assign "controlling weight" to the opinions of plaintiff's treating physicians.  To the extent that ALJ Ramos did not  "explicitly consider" the *Burgess* factors in evaluating the treating physicians' opinions, his failure to do so constitutes procedural error subject to harmless error analysis. *Schillo v. Kijakazi*, 31 F.4th 64, 79 (2d Cir. 2022). After a searching review of the record to assure that the physician rule has not been traversed, the court finds that ALJ Ramos provided "good cause" for his weight assignment to the opinions of plaintiff's treating physicians, and his determination is otherwise supported by substantial evidence.

**1.  Medical Opinions**

**a.  Dr. Nadine Khouzam**

**i.  October 30, 2012**

On October 30, 2012, primary care provider Dr. Nadine Khouzam completed a medical source statement, assessing plaintiff's physical and mental capabilities. (T. 514-17). Dr. Khouzam diagnosed plaintiff with degenerative disc facet disease L4-L5 and L5-S1. (T. 514). Dr. Khouzam opined that in a competitive work situation, plaintiff could walk three city blocks without severe pain, sit for forty-five minutes at one time, stand for ten minutes at one time, sit for less than 2 hours in an 8-hour workday, and sit, stand, and/or walk for less than

two hours in an eight-hour workday. (*Id.*). Dr. Khouzam also stated that plaintiff

required shifting positions at will from sitting, standing, or walking, frequently

taking unscheduled breaks for thirty minutes long during an eight-hour workday,

and recommended that plaintiff elevate her legs at a ninety-degree angle for fifty

percent of the time while in a sedentary job. (*Id.*). Further, Dr. Khouzam opined

that plaintiff could occasionally look down (sustained flexion of the neck), rarely

climb ladders, occasionally twist, stoop/bend, crouch/squat, climb stairs, would be

off task for twenty percent of an eight-hour workday, likely to have good and bad

days, and likely to be absent from work about three days per month because of her

impairments or treatment. (T. 515-16).

### ii.    December 10, 2018

On December 10, 2018, Dr. Khouzam examined plaintiff and completed a

check-box form about her physical limitations and mental limitations. (T. 2015-

18). Physically, Dr. Khouzam opined that plaintiff had moderate limitations for

walking, lifting, carrying, and climbing. (T. 2017). Dr. Khouzam opined that

plaintiff had severe limitations pushing, pulling, and bending. (*Id.*). Further, Dr.

Khouzam opined that plaintiff had moderate to severe impairments interacting with

others, maintaining socially appropriate behavior without exhibiting extremes,

maintaining a schedule, and attending to a daily routine. (*Id.*).[4]

### iii.    June 17, 2019

Dr. Khouzam completed an additional mental health check-box form on

June 17, 2109. She diagnosed plaintiff with having depression and anxiety

disorders. (T. 2018). Dr. Khouzam also opined that plaintiff did not present with

any evidence of limitations in the noted categories. (*Id.*).

### b.  Dr. Christine Athwal

On May 3, 2016, Dr. Athwal, plaintiff's primary care physician, completed a

medical source statement. (T. 1447-49). Dr. Athwal noted that plaintiff had been

under her care for two and one-half years. (T. 1447). Dr. Athwal diagnosed

plaintiff with degenerative disc disease and treated her with Ibuprofen. (*Id.*). Dr.

Athwal opined that plaintiff could sit for one hour at a time, stand for twenty

minutes at a time, stand/walk for a total of less than two hours in an eight-hour

workday, and sit for about four hours in an eight-hour workday. (T. 1447-48). Dr.

Athwal further opined that plaintiff could never lift or carry fifty pounds, rarely lift

or carry up to twenty pounds, and frequently lift or carry less than ten pounds. (T.

1448). Plaintiff could rarely twist, stoop/bend, crouch/squat, and could

---

[4] The court notes that it is difficult to ascertain if Dr. Khouzam intended to check both the "moderately limited" and "severely limited" boxes for two of the mental impairments on page 2017 of the record.

occasionally climb ladders and stairs. (*Id.*). Dr. Athwal also stated that plaintiff would need to take unscheduled breaks every two to three hours during an eight-hour workday for a period of fifteen to twenty minutes. (T. 1449). According to Dr. Athwal, plaintiff would be off-task twenty percent of an eight-hour workday due to her impairments, plaintiff's impairments would likely produce good and bad days, and plaintiff would likely be absent from work more than four days per month because of her impairments or treatment. (*Id.*).

### c. Dr. Nicholas Augustine

On August 24, 2017, Dr. Augustine, a treating physician, completed an Updated Medical Source Statement confirming that the functional limitations opined to in Dr. Athwal's May 3, 2016 medical source statement still existed and persisted to the same degree. (T. 2014). Dr. Augustine opined that plaintiff's function remained limited due to back pain as confirmed by the Oswestry Low Back Pain Disability Questionnaire. (*Id.*).

### d. Dr. Hannah Brundage

On October 10, 2022, Dr. Brundage, one of plaintiff's primary care physicians, completed a medical source statement. (T. 2691-94). Dr. Brundage stated that plaintiff had been a patient of the practice since 2014 and that she had been treating plaintiff since July 2021. Dr. Brundage diagnosed plaintiff with left low back pain with sciatica. (T. 2691). Dr. Brundage opined that plaintiff could sit

21

for thirty minutes at a time, stand for ten minutes at a time, stand or walk for a total of less than two hours in an eight-hour workday, sit for a total of approximately four hours in an eight-hour workday, required a job that permitted shifting positions at will, and required the use of a cane or walker. (T. 2691-92). Dr. Brundage also opined that plaintiff could rarely lift or carry ten pounds, occasionally lift or carry less than ten pounds, never lift or carry twenty pounds, and never lift carry fifty pounds. (T. 2692). Dr. Brundage further opined that plaintiff could rarely stoop, bend, crouch, squat, or climb stairs; never climb ladders; and occasionally twist and look down, grasp and twist objects, manipulate objects with her fingers, and reach. (*Id.*). Plaintiff would require unscheduled breaks every two to three hours for fifteen minutes during an eight-hour workday. (*Id.*). According to Dr. Brundage, plaintiff would be off-task for twenty percent of an eight-hour workday, plaintiff's impairments would likely "produce" good and bad days, and plaintiff would likely be absent more than four days per month. (*Id.* at 2693).

### C.    Analysis

#### a. Dr. Athwal and Dr. Augustine

It is the court's recommendation that ALJ Ramos's decision to afford "little weight" to Dr. Athwal's opinion does not warrant remand. Dr. Athwal's restrictive opinion (T. 1448-49), found in essentially a check-box form, is not well supported

by the objective evidence of record and the conservative treatment that plaintiff received. Dr. Athwal's May 3, 2016 Medical Source Statement was not supported by any rationale and was inconsistent with her own treatment notes. *See Colgan v. Kijakazi*, 22 F.4th 353, 361 (2d Cir. 2022) ("[A] treating physician's medical opinion is not entitled to controlling weight where it is provided in a check-box form and is unaccompanied by meaningful medical evidence in the administrative record."). Notably, Dr. Athwal opined that plaintiff's prognosis was "fair." (T. 1447). She prescribed Ibuprofen/Naproxen for pain, (T. 1447, 1998, 2001, 2006) and physical therapy (R. 1998, 2006 ). *See Golowach v. Colvin,* No. 16-CV-2913, 2016 WL 7264408, *9 (E.D.N.Y. Dec. 14, 2016) (finding that plaintiff who limited pain management to Ibuprofen could not be heard to claim about severe pain); *see also Vasquez v. Chater,* 125 F.3d 846, (2d Cir. 1997) (severity of plaintiff's pain suspicious where treatment of injuries limited to Tylenol); *Rutherford v. Schweiker,* 685 F.2d 60, 62 (2d Cir. 1982) (finding support for a denial of benefits since plaintiff's only pain medication was Tylenol, "a non-prescription drug that may be found in almost any family's medicine cabinet."); *Maurice v. Colvin,* No. 12-CV-2114, 2014 WL 2967442, *4 (S.D.N.Y. Jul. 2, 2014) (an over the counter medication weighs against a finding of sever impairment); *Padilla v. Colvin*, No. 10-CV-4762, 2013 WL 4125039, *12 (S.D.N.Y. Aug. 15, 2013) (recommendation

for the use of nothing stronger than over-the-counter Tylenol on an as-needed basis is itself substantial evidence that weighs against a finding of a severe impairment).

Notwithstanding plaintiff's objection (Pl. Br. at 24), ALJ Ramos appropriately considered that plaintiff sought only conservative treatment for her alleged impairments. *See* 20 C.F.R. §§ 404.1529(c)(3)(iv)-(v), 416.929(c)(3)(iv)-(v) (medication and treatment received are considered when evaluating the intensity and persistence of a claimant's symptoms); *see also Penfield v. Colvin*, 563 F. App'x 839, 840 (2d Cir. 2014) (conservative treatment weighed against a finding of disability); *Netter v. Astrue*, 272 F. App'x 54, 56 (2d Cir. 2008) (an ALJ may consider a claimant's conservative treatment as additional evidence supporting the ALJ's determination); *Shaffer v. Colvin,* No. 1:14-CV-00745, 2015 WL 9307349, at *5 (W.D.N.Y. Dec. 21, 2015) (ALJ properly discredited the claimant's allegations because her treatment was routine and conservative, consisting of medication management and physical therapy).

Insofar as Dr. Augustine's August 24, 2017 Updated Medical Source Statement was nothing more than a "follow-up statement" to Dr. Athwal's May 3, 2016 Medical Source Statement (T. 2167), ALJ Ramos supportably afforded "little weight" to the same.

### b. Dr. Khouzam

It is the court's recommendation that ALJ Ramos' decision to assign "little weight" to Dr. Khouzam's October 30, 2012 Medical Source Statement (T. 514-517) does not warrant remand. Like Dr. Athwal's opinion, Dr. Khouzam's Medical

24

Source Statement is also essentially a check-box form that is not well supported by medical evidence of record. With respect to the Dr. Khouzam's physical assessment, ALJ Ramos supportably relied on the unremarkable imaging findings (T. 511-12, 1339), and plaintiff's conservative course of treatment. *See Netter,* 272 F. App'x at 56 (2d Cir. 2008); *Shaffer,* 2015 WL 9307349, at *5.

ALJ Ramos supportably accorded "some weight" to Dr. Khouzam mental assessment, to the extent she found "satisfactory" functioning in every category which was consistent with the longitudinal record. (T. 516). Specifically, treatment records described plaintiff as calm with clear and coherent speech (T. 1519), cooperative and friendly with appropriate eye contact (T. 484), relaxed and comfortable (*Id.*), and exhibiting an appropriate mood and affect (T. 497, 1317, 1320, 1951).

At an October 20, 2014 consultative examination, Dr. Noia noted that plaintiff was cooperative with adequate social skills, made appropriate eye contact, and had adequate language (T. 1345-46). At that time, Dr. Noia opined that plaintiff's attention, concentration and memory were all intact, and that her insight and judgment were good (T. 1346). Further, treatment records describe plaintiff as not being nervous or anxious (T. 1455). Records from 2017 describe normal mood, affect, behavior, thought content, and judgment (T. 2126). Plaintiff also had normal thought content (T. 2049). In 2022, plaintiff was cooperative with adequate social skills, exhibited appropriate eye contact, and Dr. Shapiro opined that

plaintiff had a full range of affect, intact attention/concentration and intact memory. (T. 2070-72). On September 6, 2022, Dr. Brundage noted normal mood, affect, behavior, thought content and judgment. (T. 2701). Dr. O'Brien made similar findings during an office visit on July 14, 2022. (T. 2708).

### c.  Dr. Brundage

It is the court's recommendation that ALJ Ramos' decision to afford "little weight" to Dr. Brundage's opinion does not warrant remand. Like Drs. Khouzam and Athwal, Dr. Brundage's Medical Source Statement (T. 2691-94) is in check-box form and is "unaccompanied by [any] meaningful medical evidence in the administrative record." *Colgan,* 22 F.4th at 361; *see also* 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3).

Further, ALJ Ramos supportably concluded that Dr. Brundage's opinion was not supported by and was inconsistent with the substantial longitudinal record. Notably, Dr. Brundage's opinion was inconsistent with plaintiff's imaging studies, and activities of daily living. (T. 338-41, 483, 511-12, 1982, 1998-99, 2034, 2048); *see also Wavercak v. Astrue*, 420 F. App'x. 91, 94 (2d Cir. 2011) (summary order) (finding that an ALJ is not required to defer to a medical source's opinion if the opinion conflicts with plaintiff's description of his daily activities); *see also Ernestine B. v. Commissioner of Social Security*, No. 22-CV-6514, 2014 WL 4132377, *6 (W.D.N.Y. Sept. 10, 2024) ("the ALJ properly considered Plaintiff's activities as one of many factors contributing to his conclusion Plaintiff was capable of functioning at a higher level than she alleged") (citing *Cohen v. Comm'r*

26

*of Soc. Sec.*, 643 F. App'x 51, 53 (2d Cir. 2016) (finding ALJ properly discredited testimony based on record evidence of her activities of daily living, including going out with friends and using public transportation to get to her doctor appointments); *Lamorey v. Barnhart*, 158 F. App'x 361, 363 (2d Cir. 2006) ("[S]ubstantial evidence of routine activities" properly found to be inconsistent with claims of total disability); *Medina v. Comm'r of Soc. Sec.*, 831 F. App'x 35, 36 (2d Cir. 2020) (upholding a finding that activities such as driving, cleaning, doing laundry, cooking, and shopping tended to support a finding that the claimant was capable of concentrating and staying on task sufficiently to perform work activities); *Melissa R. v. Commissioner of Social Security*, No. 3:20-CV-883 (TWD), 2022 WL 874397, at *3 (N.D.N.Y. Mar. 24, 2022) (citing *Medina*, 831 F. App'x at 36) (concluding that the treating physician's opinion was not entitled to controlling weight because it was inconsistent with the physician's "own treatment notes and [claimant's] self report of her activities of daily living"); *Sharon R. v. Kijakazi*, No. 3:20-CV-902 (ATB), 2021 WL 3884257, at *6 (N.D.N.Y. Aug. 31, 2021) (The ALJ is entitled to consider a plaintiff's daily activities in conjunction with the medical evidence of record).

Also, Dr. Brundages' opined-to limitations were inconsistent with plaintiff's history of part-time work. *See* (T. 247-50, 2586-87); *see also* 20 C.F.R. § 404.1571 ("Even if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did."); *Dyjewska v. Colvin*, No. 1:15-CV-00532, 2018 WL 703103, at *5 (W.D.N.Y. Feb. 3, 2018) ("Social

27

Security regulations provide that employment 'during any period' of claimed disability may be probative of a claimant's ability to work. Thus, it would not have been impermissible for the ALJ to have drawn an adverse inference based on [the claimant's] ability to perform light-duty work, albeit on a part-time basis, during the period for which she claims to be totally disabled.") (citation omitted).

Dr. Brundage, like Dr. Athwal, opined that plaintiff would be off task for twenty percent of the workday and absent from work about four days per month due to her impairment(s) and/or treatment. (T. 2693, 1449). ALJ Ramos supportably concluded that there was no objective evidence in the record to buttress this conclusion. Dr. Brundage's opinion, as well as those of Drs. Athwal and Khouzam, was inconsistent with Dr. Shapiro's February 1, 2011 and August 27, 2012 (T. 483-87) assessments that plaintiff could maintain attention and concentration as well as attend to a routine and maintain a schedule. Similarly, Dr. Noia opined that plaintiff could attend to a routine and maintain a schedule as well as maintain attention and concentration. (T. 1347). *See Mongeur,* 722 F.2d at 1039 ("It is an accepted principle that the opinion of a treating physician is not binding if it is contradicted by substantial evidence . . . and the report of a consultative physician may constitute such evidence."). Dr. Fuess also opined that plaintiff would be off task for less than ten percent of the workday and absent from work no more than one day per month. (T. 2198-99). Notably, in contrast to her October 30, 2012 Medical Source Statement where Dr. Khouzam opined that plaintiff would be off-task twenty percent of an eight-hour workday and absent from work about

three days per month (T. 516), her December 1, 2012 statement noted that plaintiff had no limitations in maintaining a schedule, attending to a daily routine, maintaining attention and concentration for rote tasks, and functioning in a work setting (T. 2018).

ALJ Ramos did not traverse the treating physician rule, and the RFC was otherwise supported by substantial evidence in the form of medical opinions by Dr. Fkiaras and Dr. Fuess, plaintiff's treatment records, her representations, and activities of daily living.

**WHEREFORE**, it is hereby

**RECOMMENDED**, that plaintiff's motion for judgment on the pleadings (Dkt. Nos. 13, 18) be **DENIED;** and it is further

**RECOMMENDED,** that defendant's motion for judgment on the pleadings (Dkt. No. 17) be **GRANTED**; and it is further

**RECOMMENDED,** that the decision of the Commissioner be **AFFIRMED**, and plaintiff's complaint (Dkt. No. 1) be **DISMISSED IN ITS ENTIRETY**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW</u>**.

*Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and*

*Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P.

72.

Dated:  October 9, 2024

Mitchell J. Katz
U.S. Magistrate Judge