UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DAWN D.,

                                         **Plaintiff,**

  vs.                                                          5:23-CV-1194
                                                                         (MAD/MJK)

**COMMISSIONER OF SOCIAL SECURITY,**

                                         **Defendant.**
_____

**APPEARANCES:**                                   **OF COUNSEL:**

**OLINSKY LAW GROUP**                 **HOWARD D. OLINKSY, ESQ.**
250 South Clinton Street
Suite 210
Syracuse, New York 13202
Attorney for Plaintiff

**SOCIAL SECURITY ADMINISTRATION**    **VERNON NORWOOD, ESQ.**
Office of General Counsel
6401 Security Boulevard
Baltimore, Maryland 21235
Attorney for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

      Plaintiff, Dawn D., commenced this action pursuant to 42 U.S.C. § 405(g) seeking review of the decision of the Commissioner of Social Security (the "Commissioner") denying her applications for Disability Insurance Benefits and Supplemental Security Income. *See* Dkt. No. 1. In a Report-Recommendation dated October 9, 2024, Magistrate Judge Mitchell J. Katz recommended that (1) Plaintiff's motion for judgment on the pleading be denied; (2) Defendant's motion for judgment on the pleadings be granted; and (3) the Commissioner's decision be

1

affirmed. *See* Dkt. No. 19. On October 23, 2024, Plaintiff filed objections to the Report-Recommendation. *See* Dkt. No. 20. Defendant did not object or respond to Plaintiff's objections.

When a party files specific objections to a magistrate judge's report-recommendation, the district court makes a "de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). However, when a party declines to file objections or files "[g]eneral or conclusory objections or objections which merely recite the same arguments [that he presented] to the magistrate judge," the court reviews those recommendations for clear error. *O'Diah v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, *1 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted); *see McAllan v. Von Essen*, 517 F. Supp. 2d 672, 679 (S.D.N.Y. 2007). After the appropriate review, "the court may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

Neither party objects to the factual or procedural background or legal framework set forth in the Report-Recommendation. *See* Dkt. No. 20. The Court finds no clear error in those portions of Magistrate Judge Katz's decision and assumes the parties' familiarity with the same.

Plaintiff objects to Magistrate Judge Katz's conclusion on the Administrative Law Judge's ("ALJ") consideration of the *Burgess* factors.[1] *See* Dkt. No. 20 at 1. As noted by Magistrate Judge Katz, because Plaintiff applied for benefits in 2010, the older rules apply to her case. *See* Dkt. No. 20 at 15 n.3. "For claims filed before March 27, 2017, the ALJ's decision must account for the 'treating physician rule': If the record contains a treating physician's opinion about the nature and severity of the claimant's impairments, the ALJ must determine whether, in light of the administrative record, that opinion is entitled to controlling weight, or something less." *Schillo v.*

---

[1] *Burgess v. Astrue*, 537 F. 3d 117, 120 (2d Cir. 2008).

2

*Kijakazi*, 31 F.4th 64, 69 (2d Cir. 2022). "'[I]f the ALJ decides [a treating physician's] opinion is not entitled to controlling weight, it must determine how much weight, if any, to give it.'" *Id.* at 75 (quoting *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019)). "The governing regulations require an ALJ to explicitly consider certain nonexclusive factors when making this determination: '(1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.'" *Id.* (quoting *Estrella*, 925 F.3d at 95-96). If the ALJ determines that a treating physician's opinion is not entitled to controlling weight, the ALJ "must *explicitly* apply the factors listed in § 404.1527; the failure to do so is procedural error and subject to harmless error analysis." *Id.* (citing, *inter alia*, *Colgan v. Kijakazi*, 22 F.4th 353, 359 n.3 (2d Cir. 2022)). "A court can conclude that such an error is harmless if the ALJ has otherwise provided 'good reasons' for its weight assignment." *Id.* (quotation omitted).

Plaintiff argues that Magistrate Judge Katz "neglects to comment on the ALJ's error to properly consider the third *Burgess* factor regarding the consistency of medical opinions with the remaining medical evidence" which support "less than light exertional work." Dkt. No. 20 at 1-2.

Magistrate Judge Katz correctly stated that the ALJ did not give any of Plaintiff's treating physicians' opinions controlling weight. *See* Dkt. No. 19 at 18. He concluded, however, that any failure by the ALJ to explicitly consider all of the *Burgess* factors is harmless because the ALJ "provided 'good cause' for his weight assignment to the opinions of [P]laintiff's treating physicians, and his determination is otherwise supported by substantial evidence." *Id.* Magistrate Judge Katz recited Plaintiff's treating physicians' opinions in which all four physicians concluded that Plaintiff was limited in her ability to stand and/or walk. *See id.* at 18, 20-22. Plaintiff is correct that Magistrate Judge Katz did not discuss the ALJ's failure to acknowledge the

3

consistency between the four opinions. Rather, Magistrate Judge Katz concluded that the ALJ sufficiently analyzed the consistency of the medical opinions as being inconsistent with Plaintiff's longitudinal medical record and activities of daily living. *See id.* at 22-29.

"Consistency 'is an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record, not just what a medical source had available to them.'" *Nancy C. v. Comm'r of Soc. Sec.*, No. 6:23-CV-00088, 2024 WL 1468871, *6 (N.D.N.Y. Jan. 25, 2024) (quoting *Acosta Cuevas v. Comm'r of Soc. Sec.*, No. 20-CV-0502, 2021 WL 363682, *10 (S.D.N.Y. Jan. 29, 2021)). Courts have found remandable error in an ALJ's decision where the ALJ failed to adequately consider the consistency of medical opinions with one another. *See id.* at *8 ("Equally as crucial was the ALJ's failure to adequately consider the consistency of Ms. Schaffer and Dr. Poplock's opinion with the contemporaneous opinion of treating psychiatric nurse practitioner Kate Bolger, who similarly opined that plaintiff would have marked limitations in various capacities for work, including concentration and persistence") (collecting cases); *see also Ljena L. v. Comm'r of Soc. Sec.*, No. 1:21-CV-08056, 2023 WL 2136391, *6 (S.D.N.Y. Feb. 21, 2023) ("The ALJ found the opinions of PA Robinson and Dr. Thompson unpersuasive. . . . This was error . . . [because] the ALJ failed to acknowledge or address the extent to which the treating providers' opinions were consistent with each other (and with Dr. MacKinnon) regarding the question of fatigue").

Of course, "[s]olely because two opinions may be consistent with each other, does not mean they are consistent with the record as a whole . . . ." *Malia Ann B. v. Comm'r of Soc. Sec.*, No. 5:21-CV-1362 2023 WL 2838054, *7 (N.D.N.Y. Feb. 23, 2023) (citations omitted). Nevertheless, "the ALJ is obligated to discuss the consistency of a medical opinion with the other evidence in the record, which necessarily includes other medical opinions." *Id.* (collecting cases).

4

The ALJ limited Plaintiff to light work with no additional standing, sitting, or walking limitations.  *See* Dkt. No. 12-15 at 12.  "Light work requires the ability to . . . stand and walk for up to 6 hours a day, and sit for up to two hours."  *Mancuso v. Astrue*, 361 Fed. Appx. 176, 178 (2d Cir. 2010) (citing 20 C.F.R. § 404.1567(b)).  The ALJ rejected greater sitting, standing, and walking limitations opined by various medical providers as follows:

| Name | Provider's Relationship to Plaintiff | Opined Limitation | ALJ's Reason for Rejection |
|---|---|---|---|
| Nadine Khouzam, M.D. | One of Plaintiff's treating providers.  The opinion is dated October 30, 2012.  (Dkt. No. 12-7 at 93-96). | Plaintiff could sit for 45 minutes and stand for 10 minutes at a time; and sit, stand, and walk for less than 2 hours out of an eight-hour day. | The ALJ gave the opinion "little weight" because "diagnostic imaging of the spine found no more than moderate issues. . . . There are no significant MRI findings; [Plaintiff] did not regularly receive injections; and [Plaintiff] did not follow-up with an orthopedic surgeon.  She did not have surgery, and she generally underwent a very conservative course of treatment.  This is not consistent with the significant limitations found by Dr. Khouzam."  (Dkt. No. 12-15 at 17). |
| Elke Lorsensen, M.D. | Consultative examination dated October 20, 2014.  (Dkt. No. 12-13 at 35-38). | Plaintiff had no gross limitations sitting, standing, walking (Dkt. No. 12-13 at 37). | The ALJ gave the opinion "some weight" because it "is consistent with [Plaintiff's] conservative course of treatment.  It is consistent with diagnostic imaging of the spine that shows no more than moderate issues. . . . The opinion is not given more weight, as it is somewhat vague, and it was rendered in 2014."  (Dkt. No. 12-15 at 16-17). |
| Christine Athwal, M.D. | Had been treating Plaintiff for two | Plaintiff could sit for 1 hour; stand for 20 minutes at a time; and stand/walk | The ALJ gave the opinion" little weight." |

5

| | | | |
|---|---|---|---|
| | and a half years. Opinion is dated May 3, 2016. (Dkt. No. 12-13 at 134-36). | for less than 2 hours and sit for 4 hours in a total eight-hour day. | "The claimant did not have surgery, and she generally underwent a very conservative course of treatment. She consistently had only somewhat limited range of motion of the spine, and she often had negative straight leg raise testing. In addition, in support of the opinion, Dr. Athwal cited low back pain, which is a symptom and not an objective finding. Based on the above, this opinion is given little weight. The follow-up statement to this opinion is also given little weight, as it cited no objective findings, and once again, it cited only back pain." (Dkt. No. 12-15 at 17). |
| Jared Reeves, M.D. | Independent medical evaluation based on a review of Plaintiff's medical records. Dated July 25, 2016, which was sought by the ALJ. (Dkt. No. 12-13 at 123-29). | Plaintiff could sit for 4 hours; stand for 2 hours; and walk for 1 at a time; and sit for 8 hours; stand for 2 hours; and walk for 1 total in an eight-hour day (Dkt. No. 12-13 at 125). | The ALJ gave this opinion, "some weight," but did not address the sitting, standing, or walking limitations. He explained as follows:<br><br>"In support of this opinion, Dr. Reaves cited an x-ray of the spine. This is consistent with records that regularly noted no tenderness. . . . It is consistent with records that cited no sensory deficits. . . . On several occasions, [Plaintiff] noted no pain. . . . Dr. Reaves also pointed out [Plaintiff's] very conservative course of treatment. However, the opinion was rendered in 2016, and Dr. Reaves never examined the claimant. Based on the above, this opinion is given some weight." (Dkt. No. 12-15 at 16). |
| Nadine Khouzam, M.D. | One of Plaintiff's treating providers. It is | Plaintiff was moderately limited in walking with no evidence of limitation in standing or sitting. | The ALJ gave the opinion "little weight" because it was a "checkbox form" and "[r]egarding the physical opinion, it is not |

6

|  | a form for Onondaga County Department of Social Services Employability Assessment dated December 10, 2018. (Dkt. No. 12-13 at 704-05). | The form lists only Plaintiff's mental health disorders of major depressive and anxiety disorders. The form does not include Plaintiff's physical impairments. | consistent with the claimant's back impairment and conservative course of treatment . . . ." (Dkt. No. 12-15 at 17). |
|---|---|---|---|
| Hannah Brundage, D.O. | The opinion is dated October 10, 2022. Plaintiff had been seeing providers at the practice since 2014, and had been seeing this specific provider since July 2021. (Dkt. No. 12-20 at 41-43). | Plaintiff could sit for 30 minutes and stand for 10 minutes at a time; and sit for 4 hours; and stand/walk for 2 hours total in an eight-hour day. | The ALJ gave the opinion "little weight" because "[a]s stated several times, pain is a symptom, not an objective finding. In fact, there are no objective findings regarding the back to support such significant limitations. Furthermore, Dr. Brundage indicated the claimant had a good prognosis if compliant with treatment. . . ." (Dkt. No. 12-15 at 17). |
| John Fkiaras, M.D. | Consultative Examination on October 10, 2022 (Dkt. No. 12-20 at 28-32). | Plaintiff had a moderate limitation sitting for extended periods; moderate to marked limitations standing extended periods; and moderate to marked limitations walking.<br><br>Specifically, plaintiff could sit for 30-45 minutes; stand for 15-20 minutes; and walk for 10-15 minutes at a time; and sit for a total 5 hours; stand for a total of 2 hours; and walk for a total of 1 hour in an eight-hour day (Dkt. No. 12-20 at 34). | The ALJ stated that "[t]he residual functional capacity [("RFC")] [related to physical limitations] is based on the opinions of John Fkiaras, M.D." The ALJ gave the opinion "some weight."<br><br>"[T]he record indicates the claimant has greater lifting, standing and walking abilities, as she has provided childcare, worked and maintained many household activities." (Dkt. No. 12-15 at 13-14). |

Out of seven medical opinions, only one opined that Plaintiff did not have any gross limitations in walking, sitting, or standing. That opinion was from a one-time consultative examination in 2014, which ALJ Ramos found to be consistent with Plaintiff's conservative treatment. *See* Dkt. No. 12-13 at 37. In 2018, Plaintiff's treating provider, Dr. Khouzman did note that Plaintiff was only moderately limited in walking with no evidence of limitation in standing or sitting. *See* Dkt. No. 12-13 at 704-05. However, the ALJ did not acknowledge or reconcile the fact that this form contained reference only to Plaintiff's mental health diagnoses and did not discuss her physical impairments. *See id.* The five other medical opinions opined limitations in walking, standing, and sitting that would equate to Plaintiff being unable to perform light work. The ALJ "based" the physical RFC on the lesser limitations in Dr. Fkiaras' opinion but did not acknowledge that the greater limitations in Dr. Fkiaras' opinion are consistent with the greater limitations indicated in five other medical opinions. *Id.* at 13.

In concluding that the ALJ's decision did not warrant remand, Magistrate Judge Katz concluded that any error by the ALJ in failing to explicitly consider all of the *Burgess* factors is harmless because "ALJ Ramos provided 'good cause' for his weight assignment to the opinions of plaintiff's treating physicians, and his determination is otherwise supported by substantial evidence." Dkt. No. 19 at 18. Magistrate Judge Katz noted that the medical opinions which were rejected by the ALJ were in check-box forms, and were not supported "by the objective evidence of record and the conservative treatment that [P]laintiff received." *Id.* at 22-23.

Upon a de novo review of the issues presented in Plaintiff's objections, the Court finds that the ALJ's decision warrants remand because the ALJ traversed the treating physician rule, and the decision does not provide substantial evidence for a light work RFC determination.

The Second Circuit has expressly held that "the opinion of the treating physician [should not] be discounted merely because he has recommended a conservative treatment regimen." *Burgess*, 537 F.3d at 129. Although Plaintiff's treatment history is conservative, three treating physicians, who ordered the conservative treatment, opined that Plaintiff was limited to less than light work capabilities in terms of standing, sitting, and walking. *See* Dkt. No. 12-7 at 93-96; Dkt. No. 12-13 at 134-36; Dkt. No. 12-20 at 41-43. Two independent physicians, one who examined Plaintiff and one who reviewed her medical records opined similar limitations. *See* Dkt. No. 12-13 at 123-29; Dkt. No. 12-20 at 28-32. Neither the ALJ nor Magistrate Judge Katz acknowledged that the five medical opinions were consistent with one another. The consistency factor considers the medical opinion "with the record as a whole." 20 C.F.R. § 404.1527(4). This factor does not exclude other medical opinions. It also does not limit consideration to only objective evidence that is in the record.

Here, there are six medical opinions that are consistent with each other and opine greater limitations than the ALJ found. The ALJ recounted the medical opinions related to Plaintiff's physical limitations. Only one opined no limitations in walking, standing, and sitting. The other six opinions opined limitations supportive of a finding that Plaintiff could perform, at most, sedentary work. This is not a circumstance where there is only one restrictive opinion that is contradicted by numerous other opinions. The ALJ did not acknowledge the consistency between the medical opinions which were provided across ten years and from treating providers and reviewing doctors. This alone constitutes remandable error. *See Luisa D. v. Comm'r of Soc. Sec.*, No. 1:23-CV-05148, 2024 WL 2830919, *7 (S.D.N.Y. June 3, 2024) ("[I]t was error for the ALJ to neglect to consider that Plaintiff's long-term primary care physician and two medical experts retained by the Commissioner all shared the opinion that her ability to meet the physical demands

9

of work activity, including (in particular) with respect to prolonged standing and walking, was more limited than the ALJ believed"); *Malia Ann B. v. Comm'r of Soc. Sec.*, No. 5:21-CV-1362, 2023 WL 2838054, *7 (N.D.N.Y. Feb. 23, 2023); *Lennett E. v. Comm'r of Soc. Sec.*, No. 1:24-CV-01831, 2024 WL 4880077, *6 (S.D.N.Y. Nov. 25, 2024); *Rachel J. v. Comm'r of Soc. Sec.*, No. 1:20-CV-1091, 2022 WL 205691, *6 (W.D.N.Y. Jan. 24, 2022).

 First, concerning Plaintiff's conservative treatment, the ALJ notes that Plaintiff never received surgery. *See* Dkt. No. 12-15 at 17. The ALJ does not cite any records in support of this contention, such as a record recommending surgery wherein Plaintiff declined. Second, Magistrate Judge Katz cited three cases in support of the conclusion that the ALJ properly considered Plaintiff's conservative treatment history. *See* Dkt. No. 19 at 24 (citing *Penfield v. Colvin*, 563 Fed. Appx. 839, 840 (2d Cir. 2014); *Netter v. Astrue*, 272 Fed. Appx. 54, 56 (2d Cir. 2008); *Shaffer v. Colvin*, No. 1:14-CV-00745, 2015 WL 9307349, *5 (W.D.N.Y. Dec. 21, 2015)). Respectfully, the Court does not agree that these cases support the ALJ's RFC determination.

 In *Penfield*, the treating orthopedist's more restrictive opinion was rejected because it was inconsistent with treatment notes and the opinions of three other physicians. *See Penfield v. Colvin*, No. 3:12-CV-630, 2013 WL 1635884, *2 (N.D.N.Y. Apr. 16, 2013). The plaintiff underwent "conservative treatment" including the use of heating pads, ice packs, gentle stretching, proper posture, proper weight, and "intermittent use of medications" but was limited to sedentary work. *Id.* at *1. In *Netter*, the plaintiff's "condition improved with treatment and [] he ceased seeking treatment . . . despite [the provider's] repeated attempts to schedule an appointment for him." *Netter v. Barnhart*, No. 02-CV-0691, 2006 WL 8449279, *2 (W.D.N.Y. Dec. 20, 2006). The other medical opinion in the record from Netter's orthopedic specialist opined that Netter was not "totally disabled." *Id.* That "opinion was consistent with the opinions

10

of multiple state-employed consultative doctors" and another provider. *Netter*, 272 Fed. Appx. at 55. In *Shaffer*, the *one* treating physician medical opinion opining "extremely restrictive" limitations was contradicted by one consultative examination and the conservative treatment record. *Shaffer v. Colvin*, No. 1:14-CV-00745, 2015 WL 9307349, *4 (W.D.N.Y. Dec. 21, 2015).

Here, there is only one medical opinion that supports a light work determination: the 2014 consultative examiner's opinion. All other medical opinions that are specifically referring to Plaintiff's physical impairments opine that Plaintiff is more limited in her ability to walk, stand, and sit. Although Plaintiff does have a conservative treatment history, the ALJ failed to discuss the consistency of the medical opinions with each other, which span ten years and come from treating providers and reviewers. The cases cited by Magistrate Judge Katz are distinguishable in that this is not a circumstance where a more restrictive opinion is the outlier compared to the conservative treatment history and all other medical opinions in the record. The more restrictive opinions are the majority.

The ALJ also commented on some of Plaintiff's treating providers' medical opinions being completed on "checkbox forms." Dkt. No. 12-15 at 2167-68. The Second Circuit has explained that "the evidentiary weight of a treating physician's medical opinion [should not] be discounted by an ALJ based on the naked fact that it was provided in a check-box form." *Colgan v. Kijakazi*, 22 F.4th 353, 361 (2d Cir. 2022) (footnote omitted). Rather, "the nature of an ALJ's inquiry in disability factfinding turns on the substance of the medical opinion at issue—not its form—and ultimately whether there is reasonable evidence in the record that supports the conclusions drawn by the medical expert." *Id.* (citation omitted). In *Colgan*, the Second Circuit concluded that the ALJ's reasoning for discounting a medical opinion was "flawed" because the "check-box form

11

opinion was supported by voluminous treatment notes gathered over the course of nearly three years of clinical treatment." *Id.* at 362.

The medical opinions that the ALJ identified as being submitted in "checkbox form[s]" are from Dr. Khouzman and Dr. Brundage. Dkt. No. 12-15 at 17-18. Plaintiff established care with Dr. Khouzman in 2012 at St. Joseph's Hospital Health Center's Family Medicine Center. *See* Dkt. No. 12-7 at 86. As noted in Dr. Brundage's medical opinion, Plaintiff had been seeing providers at St. Joseph's Family Medicine Center since 2014, and had been seeing Dr. Brundage, specifically, since July 2021. *See* Dkt. No. 12-20 at 41-43. The administrative transcript in this case contains hundreds of pages of medical records from St. Joseph's Hospital Health Center, including the Hospital's primary care, physical therapy, and emergency departments. *See* Dkt. No. 12-7 at 69-92; Dkt. No. 12-13 at 40-103, 444-522, 542-699; Dkt. No. 12-14 at 2-133. The treatment notes from Drs. Khouzman and Brundage span ten years. *See* Dkt. No. 12-7 at 69; Dkt. No. 12-20 at 107. The ALJ did not discuss whether the providers' treatment records support their opinions, despite their check box form.

It is well settled that an ALJ cannot replace his or her opinion for that of medical professionals. The physicians in this case were aware of Plaintiff's "conservative" treatment, because they were either in charge of her treatment or reviewed her medical records. Despite that conservative treatment, five medical professionals opined greater limitations than the ALJ found. The ALJ's rejection of those medical findings because they are "not consistent" with Plaintiff's "back impairment and conservative course of treatment," Dkt. No. 12-15 at 17, replaces the providers' findings with his own. As an additional example, the ALJ stated that "[w]hile [Plaintiff] was prescribed a cane in July 2022, it is not consistent with the normal clinical findings of record, and it is not consistent with [Plaintiff's] conservative course of treatment . . . ." Dkt.

12

No. 12-15 at 15 (citing Dkt. No. 12-20 at 107-11). Based on the Court's review of the administrative record, Plaintiff was first prescribed a cane in 2020 by Gregory S. Faughnan, M.D. *See* Dkt. No. 12-20 at 75-76, 92-93. However, Plaintiff "was unable to pick [it] up due to insurance issues." *Id.* at 55. The prescription was refilled in 2022. *See id.* Again, it is Plaintiff's treating providers, who engaged with Plaintiff in her conservative treatment, that determined she would benefit from the use of a cane. The ALJ's contrary conclusion inappropriately overrides multiple medical determinations. On this ground alone, the Court could order remand. *See Shaw v. Chater*, 221 F.3d 126, 134-35 (2d Cir. 2000) ("[T]he district court improperly characterized the fact that Dr. Cassvan recommended only conservative physical therapy, hot packs, EMG testing—not surgery or prescription drugs—as substantial evidence that plaintiff was not physically disabled during the relevant period. Neither the trial judge nor the ALJ is permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion. . . . Essentially, the ALJ and trial court imposed their notion that the severity of a physical impairment directly correlates with the intrusiveness of the medical treatment ordered. This is not the overwhelmingly compelling type of critique that would permit the Commissioner to overcome an otherwise valid medical opinion").

Next, Magistrate Judge Katz cited five cases to support the conclusion that Plaintiff's use of over-the-counter medications did not support the restrictive medical opinions. *See* Dkt. No. 19 at 23-24 (citing *Golowach v. Colvin*, No. 16-CV-2913, 2016 WL 7264408, *9 (E.D.N.Y. Dec. 14, 2016); *Vasquez v. Chater*, 125 F.3d 846, (2d Cir. 1997); *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982); *Maurice v. Colvin*, No. 12-CV-2114, 2014 WL 2967442, *4 (S.D.N.Y. July 2, 2014); *Padilla v. Colvin*, No. 10-CV-4762, 2013 WL 4125039, *12 (S.D.N.Y. Aug. 15, 2013)).

13

First, the two Second Circuit cases cited by Magistrate Judge Katz were decided before *Burgess*. The Second Circuit in *Burgess* expressly stated that "the opinion of the treating physician [is not] to be discounted merely because he has recommended a conservative treatment regimen." *Burgess*, 537 F.3d at 129 (citation omitted). The Second Circuit explained that "[t]he fact that a patient takes only over-the-counter medicine to alleviate her pain may, however, help to support the Commissioner's conclusion that the claimant is not disabled if that fact is accompanied by other substantial evidence in the record, such as the opinions of other examining physicians and a negative MRI." *Id.* (citing *Diaz v. Shalala*, 59 F.3d 307, 314 (2d Cir. 1995)).

Next, in *Golowach*, despite the "plaintiff['s] limited his pain management to Ibuprofen," she was limited to sedentary work. *Golowach*, 2016 WL 7264408, at *4. The disabling medical opinion was also contradicted by an opinion from a specialist and from Plaintiff's "most recent physical therapist, who opined that, after seeing plaintiff on seven occasions, plaintiff could stand, walk, and push/pull/bend for two-to-four hours each, [and] sit more than four hours." *Id.* at *7. In *Maurice*, the district court upheld the ALJ's finding that the plaintiff did not have certain severe impairments, in part because the plaintiff "was instructed to use nothing stronger than Maalox, an over-the-counter medication." *Maurice*, 2014 WL 2967442, at *16. Similarly, in *Padilla*, the plaintiff's treating provider's "recommendation for the use of nothing stronger than over-the-counter Tylenol on an as-needed basis . . . [was] itself substantial evidence that weighs against a finding of a severe impairment." *Padilla*, 2013 WL 4125039, at *12.

In the present case, the ALJ concluded that Plaintiff did have severe impairments including degenerative disc disease of the lumbar spine, despite her use of over-the-counter medications like ibuprofen and naproxen. *See* Dkt. No. 12-15 at 9. At various times in her treatment, such as 2017, 2019, and 2020, Plaintiff was prescribed gabapentin and celebrex for

pain, and benzonatate and cyclobenzaprine for muscle spasms, which are prescribed medications. *See* Dkt. No. 12-14 at 6-13; Dkt. No. 12-7 at 88; Dkt. No. 12-13 at 55; Dkt. No. 12-20 at 60. Therefore, the Court does not agree that reliance on Plaintiff's use of over-the-counter medications constitutes substantial evidence in support of the ALJ's RFC determination where neither the ALJ nor the magistrate judge discussed Plaintiff's use of prescription-strength medications to control her pain and muscle spasms.

As to the ALJ's discussion about Plaintiff's subjective complaints of pain, some of the records the ALJ cited do indicate a lack of abdominal tenderness, *see* Dkt. No. 12-7 at 69-71, but they also include reports of pain in the abdomen and back. *See id.* at 70. In other records cited by ALJ Ramos, where no abdominal tenderness was noted, Plaintiff reported back pain, and there was tenderness in her back and hips on examination. *See id.* at 83-84. During an examination on September 20, 2012, Plaintiff had no tenderness upon palpation of her back. *See id.* at 88. Then, the record noting that Plaintiff had no sensory deficits was a discharge note from an emergency department after Plaintiff had presented with nausea and dizzy spells from a panic attack. *See* Dkt. No. 12-13 at 13-14. In another record the ALJ cited to support his statement that Plaintiff reported "no pain," Plaintiff reported no back pain, but was positive for abdominal pain. *See* Dkt. No. 12-13 at 142. In the final record cited by the ALJ to show that Plaintiff reported no pain, she had reported to the hospital because of a cough and cold. *See* Dkt. No. 12-13 at 401. It is true that during that visit, she reported no back pain. *See id.*

At another point in the ALJ's decision, he cited five pages of medical records, from the thousands in the record, which indicate that in 2012, Plaintiff "had no lumbar tenderness, no thoracic tenderness and no cervical tenderness . . . . At a 2014 examination, the claimant had full strength and no sensory deficits . . . . At a 2016 examination, she had normal range of motion and

15

negative straight leg raise testing . . . ., and [r]ecords from 2019 describe normal muscle tone and no sensory deficits . . . ." Dkt. No. 12-15 at 15 (citing Dkt. No. 12-13 at 37, 42, 686; Dkt. No. 12-14 at 18). Likewise, the ALJ stated that "[w]hile [Plaintiff] was prescribed a cane in July 2022, it is not consistent with the normal clinical findings of record, and it is not consistent with [Plaintiff's] conservative course of treatment . . . ." *Id.* (citing Dkt. No. 12-20 at 107-11).

In the 2022 record cited by the ALJ, Plaintiff, objectively, had a "[d]ecreased range of motion (slightly in all directions, most limited in extension). Positive left straight leg raise test. Negative right straight leg raise test." Dkt. No. 12-20 at 108. Also, in the records cited by the ALJ, Plaintiff had severe pain with motion and an antalgic gait. *See* Dkt. No. 12-3 at 42. Although she had a normal range of motion and negative straight leg tests, she had tenderness in her lumbar back and pain. *See id.* at 686. In his 2020 disability determination, ALJ Ramos gave Dr. Reaves' opinion "significant weight," citing to the same records concerning Plaintiff's tenderness, pain, and deficits. *See* Dkt. No. 12-8 at 581. Despite giving the opinion "significant weight," he rejected the standing, sitting, and walking limitations opined by Dr. Reaves. *See id.* In his 2022 decision, ALJ Ramos cites the exact same medical records but gave the medical opinion only "some weight" and did not expressly address the walking, standing, and sitting limitations. Dkt. No. 12-15 at 20. ALJ Ramos does not reconcile the normal findings in the treatment records with the myriad of records demonstrating decreased range of motion and pain. *See* Dkt. No. 12-13 at 560, 586, 658, 683, 686, 694; Dkt. No. 12-14 at 5, 42, 49-50, 70, 79, 103; Dkt. No. 12-20 at 47, 57, 77, 94, 107, 113. Nor is it clear to the Court why ALJ Ramos altered the weight he gave to the same physician's opinion across his two disability determinations.

The ALJ explained that, "[a]s stated several times, pain is a symptom, not an objective finding. In fact, there are no objective findings regarding the back to support such significant

16

limitations." Dkt. No. 12-15 at 18.  The ALJ's commentary overlooks the Social Security Administration's Ruling 16-3p which clearly states that "[s]ymptoms cannot always be measured objectively through clinical or laboratory diagnostic techniques."  Soc. Sec. Ruling 16-3p Titles II & XVI: Evaluation of Symptoms in Disability Claims, 2017 WL 5180304, *5 (S.S.A. Oct. 25, 2017).[2]  The Ruling does note that "objective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms, including the effects those symptoms may have on the ability to perform work-related activities for an adult or to function independently, appropriately, and effectively in an age-appropriate manner for a child with a title XVI claim."  *Id.*  "However, [the ALJ] will not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual."  *Id.*

      ALJ Ramos is correct that self-reported pain is not an objective finding.  *See* Dkt. No. 12-15 at 18.  However, the lack of objectivity should not be used to disregard Plaintiff's symptoms and the six medical opinions that concluded Plaintiff was more limited because of her pain.

      Finally, Magistrate Judge Katz upheld the ALJ's determination that the medical opinions' more restrictive limitations were inconsistent with Plaintiff's part-time work.  *See* Dkt. No. 19 at 27.  Plaintiff testified that she worked only part-time jobs.  *See* Dkt. No. 12-17 at 18, 61.  The most she worked in a week was twenty hours.  *See id.* at 61.  She stated that while at work,

---

[2] "This SSR, republished in its entirety, includes a revision to clarify that our adjudicators will apply SSR 16-3p when we make determinations and decisions on or after March 28, 2016.  When a Federal court reviews our final decision in a claim, we also explain that we expect the court to review the final decision using the rules that were in effect at the time we issued the decision under review.  If a court remands a claim for further proceedings after the applicable date of the ruling (March 28, 2016), we will apply SSR 16-3p to the entire period in the decision we make after the court's remand."  SSR 16-3p, 2017 WL 5180304, at *1.

17

coworkers would ask if she had an injury because of the difficulty she had walking, and her "boss would catch [her] leaning on the counters." *Id.* at 35. In 2014, she reported to her doctor that she "had to miss work the past week" due to pain. Dkt. No. 12-13 at 98. In 2022, Dr. Brundage filled out paperwork for a temporary leave of absence because Plaintiff's "pain often requires her to call in or leave early from work." Dkt. No. 12-20 at 107. The ALJ did not acknowledge this. The ALJ did discuss that in 2020, one of Plaintiff's providers determined that Plaintiff did not need to be taken out of work. *See* Dkt. No. 12-15 at 16. However, the ALJ does not reconcile the statement that Plaintiff does not need to be completely out of work with the six medical opinions opining greater limitations. The ALJ also stated that Plaintiff "received unemployment in 2021. . . . While not dispositive, this is an indication the claimant felt ready, willing and able to work." Dkt. No. 12-15 at 15. The ALJ does not provide any explanation for how Plaintiff's application for unemployment supports less physical limitations.

      The ALJ also did not ask the vocational expert to identify any part-time jobs that Plaintiff could perform given the proposed RFC. *See* Dkt. No. 12-15 at 51. Rather, the ALJ asked, regarding the number of available jobs provided by the expert, whether they "directly correlated to full-time work for the individual" jobs that had been identified. *Id.* at 54. The Court agrees with Plaintiff that the ALJ failed to reconcile her part-time work with being able to work full-time despite Plaintiff's complaints about her pain while working and need to lean on counters and the numerous medical opinions concluding that Plaintiff was more limited that what full-time light work requires. *See* Dkt. No. 20 at 2-3. It is unclear to the Court how a medical opinion that Plaintiff could stand for only two hours in an eight-hour day is inconsistent with Plaintiff working, at most, four or five hours a day, sometimes working as little as one day a week, she can

18

only stand in one spot for forty-five minutes without having to sit down, and she would have to lean on the counters.

Based on the foregoing, the Court concludes that the ALJ's RFC determination is not supported by substantial evidence and does traverse the treating physician rule.  The ALJ failed to acknowledge the consistency between six medical opinions that found greater limitations in Plaintiff's ability to walk, sit, and/or stand.  Although Plaintiff's treatment has been conservative, she was not prescribed only over-the-counter medication for her pain, and "the opinion of the treating physician [should not] be discounted merely because he has recommended a conservative treatment regimen." *Burgess*, 537 F.3d at 129.  Of course, in 2014, the consultative examiner found no limitations in Plaintiff's ability to walk, sit, and stand after a single examination of Plaintiff, but all other doctors found more restrictive limitations.  This includes treating providers and reviewing physicians who provided opinions on the ALJ's request.  The ALJ's failure to discuss the opinions' consistency with each other, his seemingly contradictory conclusions between his 2020 and 2023 opinions concerning Dr. Reaves' opinion, the failure to acknowledge Plaintiff's need for more intense pain medications, and the failure to reconcile Plaintiff's part-time work with an ability to work full time all warrant remand.  On remand, the Court recommends that the case be referred to a different administrative law judge.

Accordingly, after carefully reviewing the Report-Recommendation, the entire record in this matter, and the applicable law, the Court hereby

**ORDERS** that Magistrate Judge Katz' Report-Recommendation (Dkt. No. 19) is **REJECTED** for the reasons set forth herein; and the Court further

**ORDERS** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 13) is **GRANTED**; and the Court further

**ORDERS** that Defendant's motion for judgment on the pleadings (Dkt. No. 17) is **DENIED**; and the Court further

**ORDERS** that the Commissioner's decision is **REVERSED AND REMANDED for further proceedings consistent with this Memorandum-Decision and Order**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED**.

Dated: December 18, 2024
Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge